**SWEET DREAMS UNLIMITED, INC., plaintiff,**

v.

**DIAL–A–MATTRESS INTERNATIONAL, LTD., et al., defendants.**

**No. 92 C 5171.**

United States District Court, N.D. Illinois.

Oct. 8, 1992.

Goldman and Marcus, Chicago, Ill., for plaintiff.

Jeffrey J. Keyes, James J. Long, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Dial–A–Mattress International, Ltd., Dial–A–Mattress Operating Corporation ("Dial–A–Mattress Operating"), Napoleon Barragan, Luis Barragan ("Barragan") and Joseph Vicens have moved to dismiss or stay this action brought against them by Sweet Dreams Unlimited, Inc. ("Sweet Dreams"), at least pending the resolution of arbitration proceedings that have been instituted in New York by Barragan and Dial–A–Mattress Operating against Sweet Dreams. During the initial status hearing on the matter, this Court expressed its views orally as to a portion of the issues that were posed both by the case generally and by the motion to dismiss. Since then the parties have—as this Court then requested—supplemented their earlier memoranda by filings addressed to the specific issue to which this Court had directed that they focus their attention. For the reasons briefly stated in this memorandum opinion and order, defendants' motion to dismiss or stay is denied.

Defendants continue to concentrate most of their efforts on setting out the broad principles that favor arbitration, and particularly on the Supreme Court's decision of a quarter century ago in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). But broad principles do not decide concrete

cases (though they may certainly help), and the arbitration clause in *Prima Paint* differs from that chosen by the parties here in a critical—indeed a dispositive—respect.

*Prima Paint* decided, over a three-Justice dissent authored by Justice Black that criticized what the dissenters viewed as the bootstrap nature of the majority's approach, that a claim of fraud in the inducement of a contract was arbitrable under the then (and now) standard arbitration clause that is recommended by the American Arbitration Association (quoted in *Prima Paint,* 388 U.S. at 398, 87 S.Ct. at 1803):

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association.

This case (like *Prima Paint*) has its gravamen in the claimed fraudulent inducement of the March 8, 1991 Agreement between Barragan and Sweet Dreams,[1] but here the parties' agreement to arbitrate differs from that AAA-recommended provision. Here is what Agreement ¶ 4 says instead:

> Any disputes arising out of the agreement shall be settled and determined by the American Arbitration Association of the City of New York and their finding shall be binding and conclusive upon the parties hereto and judgment may be entered thereon in any court of record.

Does that difference make a difference— that is, is it material? Of course this Court must and will adhere to the Court's majority decision in *Prima Paint,* despite whatever independent force it believes may attach to the reasoning of the dissent. But it should be noted that the *Prima Paint* majority itself relied on the fact that the contract there "contain[ed] an arbitration clause as broad as this one" (388 U.S. at 399, 87 S.Ct. at 1804)[2] and that the majority opinion then repeated that same "broad" characterization after having again quoted

1. From the parties' prior presentations to this Court, it has determined (at least for threshold purposes) that Barragan was acting as nominee for one or both of the Dial–A–Mattress corpora-
tions. This opinion will proceed on that premise as well.

2. "This one" was the AAA's standard clause quoted earlier in this opinion.

the AAA's phrase "[a]ny controversy or claim arising out of or relating to this agreement, or the breach thereof" (*id.* at 406, 87 S.Ct. at 1807). Defendants urge that the different language chosen by the parties here, embracing only "disputes arising out of the agreement," is entitled to be given just as sweeping a reading, for which purpose they call this Court's attention to the opinion issued by its colleague Honorable Charles Kocoras in *Schacht v. Hartford Fire Ins. Co.*, No. 91 C 2228, 1991 WL 171377, at *2–*5, 1991 U.S.Dist. LEXIS 12145, at *8–*14 (N.D.Ill. Aug. 30, 1991).

Defendants are of course wrong in saying of *Schacht* (D.Supp. Brief at 2):

This case is dispositive of the question posed by this Court.

After all, we are regularly reminded by our Court of Appeals that district judges' opinions are of no precedential value. Hence this Court's great respect for its colleague Judge Kocoras does not require adherence to his views if this Court perceives them to be mistaken. And in this instance one thing that does *not* appear to have been pointed out to Judge Kocoras in *Schacht* (at least his opinion is silent on the subject) is the fact that *Prima Paint* itself contains a clue that there is indeed a material difference between (1) what the Court there viewed as a broad arbitration clause and (2) the clause that is at hand here.

Some brief explanation may be in order. *Schacht*, 1991 WL 171377, at *3–*4, 1991 U.S.Dist. LEXIS 12145, at *9–*10 declined to follow the directly contrary decision of Judge Edward Weinfeld in *Michele Amoruso E Figli v. Fisheries Development Corp.*, 499 F.Supp. 1074, 1080–81 (S.D.N.Y. 1980), which had in turn adhered to the Second Circuit's pre-*Prima Paint* decision in *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961). Interestingly enough, *Prima Paint*, 388 U.S. at 402 n. 8, 87 S.Ct. at 1805 n. 8 had actually cited *Kinoshita* with apparent favor. And although the current status of *Kinoshita* was later questioned by the plaintiff in *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854–55 (2d Cir. 1987), the Second Circuit there declined the

invitation to overrule *Kinoshita* (*id.* at 854 n. 6).

Just one Court of Appeals decision of recent vintage has dealt with a clause that is essentially on all fours with that chosen by the contracting parties in this case. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) is so much on point that it is worth quoting here at length:

We interpret "arising hereunder" as synonymous with "arising under the Agreement." The phrase "arising under" has been called "relatively narrow as arbitration clauses go." (*Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 364 (S.D.N.Y.1966)). In *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir.1961), Judge Medina concluded that when an arbitration clause "refers to disputes or controversies 'under' or 'arising out of' the contract," arbitration is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." Judge Medina reasoned that the phrase "arising under" is narrower in scope than the phrase "arising out of or relating to," the standard language recommended by the American Arbitration Association. *Id.*

In a recent case, a district court amplified Judge Medina's reasoning. In *Michele Amoruso e Figli v. Fisheries Development Corp.*, 499 F.Supp. 1074, 1080 (S.D.N.Y.1980), the court discussed the Supreme Court's interpretation of an arbitration clause, noting that "arising out of or relating to this agreement" had been labelled a "broad arbitration clause." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270, 1274 (1967)). The court went on to say that in the case before it, "the clause is limited to differences or disputes 'arising out of this Agreement'; notably, it omits reference to disputes 'relating to' the agreements. The omission is significant in the Second Circuit." *Michele Amoruso e Figli*, 499 F.Supp. at 1080.

The omission should be significant in this circuit as well. The standard clause suggested in the U.S.–Korean Commercial Arbitration Agreement contains the phrase, "out of or in relation to or in connection with this contract, or for the breach thereof." We have no difficulty finding that "arising hereunder" is intended to cover a much narrower scope of disputes, *i.e.*, only those relating to the interpretation and performance of the contract itself.

This Court is persuaded that it would be anomalous to hold that a challenge to the very existence of an agreement, based on fraud in its inducement—that is, a dispute as to whether there is any agreement at all—ought to be viewed as arbitrable under a clause that defines the questions subject to arbitration as "[a]ny disputes arising out of the agreement." By contrast, an agreement also to arbitrate "[a]ny controversy or claim ... related to this agreement" does not require the same degree of artificial levitation—*Genesco*, 815 F.2d at 855 pointed to the same distinction in language, and it found confirmation of that distinction in that Court of Appeals' own earlier decision in *Kinoshita:*

> The district court concluded that the language of the Genesco/Kakiuchi–America arbitration clause—"[a]ny controversy arising out of or relating to this contract"—is sufficiently broad to require arbitration of Genesco's fraudulent inducement claim against Kakiuchi–America. We agree. *Kinoshita* itself recognized that the inclusion of the phrase "relating to" in an arbitration provision requires a fraudulent inducement claim to be resolved by the arbitrators and not the courts. 287 F.2d at 953; *see [S.A. Mineracao Da Trindade] Samitri [v. Utah International, Inc.]*, 745 F.2d [190] at 194 [2nd Cir.1984]; *see also Prima Paint*, 388 U.S. at 406, 87 S.Ct. at 1807 ("[a]ny controversy or claim arising out of or relating to this agreement" is easily broad enough to encompass fraudulent inducement claim). The arbitration clause therefore covers Genesco's fraud claim against Kakiuchi–America.

In summary, although this Court has consistently adhered to the public policy favoring arbitration, as taught both in the Federal Arbitration Act and the case law in this area, it cannot ignore the contracting parties' choice of an arbitration clause that is narrower than the well-known standard clause prescribed by the AAA. That difference is meaningful, and one obvious consequence of that difference ought to be that the parties have not committed to arbitrators rather than to a court the question whether any contract exists at all.

Defendants' motion in the alternative to dismiss or stay this action is therefore denied. At the status hearing on October 9 the parties should be prepared to address the question whether the converse result should follow—whether the arbitration that has been launched by Barragan and Dial–A–Mattress Operating ought to be stayed pending the resolution in this action of the threshold question whether the Barragan–Sweet Dreams agreement was induced by fraud.