J.B. HARRIS, INC., Plaintiff,

v.

RAZEI BAR INDUSTRIES, LTD., Dr. Madeleine Mumcuoglu, Dr. Kostas Mumcuoglu, and Ofer Amit, Defendants.

No. 97–CV–3520 (DRH).

United States District Court, E.D. New York.

Aug. 11, 1998.

Anne F. Pizzo, New Hyde Park, NY (David Schnall, of Counsel), for Plaintiff.

Schwab Goldberg Price & Dannay, New York, NY by Richard Dannay, David O. Carson, for Defendants.

### MEMORANDUM & ORDER

HURLEY, District Judge.

Presently before the Court is the motion of Defendants Razei Bar Industries, Ltd. ("Razei Bar"), Dr. Madeleine Mumcuoglu ("Dr.M.Mumcuoglu"), Dr. Kostas Mumcuoglu ("Dr.K.Mumcuoglu"), and Ofer Amit ("Amit") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and Rule 12(b)(3), as well as 9 U.S.C. §§ 3 and 206, that the Court: (1) dismiss this action for improper venue; (2) compel arbitration; and (3) dismiss for lack of personal jurisdiction. As set forth more fully below, the Court dismisses this action pursuant to Rule 12(b)(3) and thus does not reach the other arguments of Defendants.

### BACKGROUND

Plaintiff J.B. Harris, Inc. ("J.B.Harris") is an Illinois corporation in the "business of acquiring the exclusive rights to sell natural health products in the United States." (Sept. 9, 1997 Harris Schnall Decl. ("Schnall Decl.") ¶ 2.) Razei Bar—a manufacturer of health products—is an Israeli corporation with its only offices in Jerusalem, Israel. (Aug. 17, 1997 Dr. Madeleine Mumcuoglu Decl. ("M. Mumcuoglu Decl.") ¶¶ 2, 4.) Dr. M. Mumcuoglu is the President of Razei Bar; Dr. K. Mumcuoglu, her husband, is the Director of Research and Development for Razei Bar and a minority shareholder of that company. (Id. ¶ 1; Aug. 14, 1997 Dr. Kostas Mumcuoglu Decl. ¶ 2.) Amit is Razei Bar's Business Manager. (Aug. 17, 1997 Ofer Amit Decl. ¶ 2.)

Plaintiff and Defendants first came into contact in 1994 when, after reading an article highlighting Razei Bar's product "Sambucol,"[1] the President of J.B. Harris—Harris Schnall—contacted Razei Bar in Israel. (Schnall Decl. ¶ 3.) The parties discussed the distribution of Sambucol by J.B. Harris.

In December 1994, Schnall traveled to Israel to undertake negotiations with Razei Bar. (Id. ¶ 5.) The parties entered into a distribution agreement, a draft of which was presented to Schnall while he was in Israel. That draft included a provision that "any dispute concerning this agreement or deriving therefrom shall be adjudicated in the appropriate legal institutions in the State of Israel." (M. Mumcuoglu Decl. Ex. A ¶ 11(a).) The draft also provided that "in any instance of dispute between [the parties] they will turn to an arbitrator." (Id. ¶ 11(b).)

According to Schnall, the forum selection clause in the draft agreement "especially concerned" him. (Schnall Decl. ¶ 6.) He consulted with his attorney who "confirmed that the forum selection clause limited [his] ability, as a practical matter[,] to enforce the Agreement." (Id. ¶ 7.) Nonetheless, on March 13, 1995, the parties executed a Distribution and Marketing Agreement (the "Agreement"), and J.B. Harris began its efforts at marketing and selling Sambucol in the United States. (Id. ¶ 10.)

In the present action, Plaintiff alleges that Defendants fraudulently misrepresented that Sambucol was a "unique, patented and trademark protected elderberry product." (Id. ¶ 8.) Plaintiff claims that it relied upon this misrepresentation in agreeing to distribute Sambucol, and, as a result, "suffered devastating losses" and "incurred huge legal expenses fighting and defending against competing elderberry products." (Id. ¶ 16.)

Defendants now move on a number of grounds, including under Rule 12(b)(3) to dismiss for improper venue.

### DISCUSSION

I. *Procedures by Which to Enforce a Forum Selection Clause*

The first issue the Court must address is one which the Fifth Circuit has recently

---

**1.** Sambucol is an elderberry-based product purported to have flu-fighting properties.

described as "enigmatic." *Haynsworth v. The Corporation,* 121 F.3d 956, 961 (5th Cir.1997). This is the question—not discussed by the parties—whether a motion seeking dismissal based on a forum selection clause should be made pursuant to Rule 12(b)(3) (dismissal for improper venue), Rule 12(b)(6) (dismissal for failure to state a claim), or some other procedural vehicle. The Second Circuit has recently noted the lack of consistency among courts—including courts in this Circuit—as to the proper method by which this issue should be addressed. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997). Stating that "no consensus developed as to the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause," the court did not adopt a particular approach. *Id.* (collecting cases) (also citing a commentator who opined that "there is no easy answer to the enforcement procedure question because there is no existing mechanism with which forum selection enforcement is a perfect fit") (citing Patrick J. Borchers, *Forum Selection Agreements in the Federal Courts After Carnival Cruise: A Proposal for Congressional Reform,* 67 Wash. L.Rev. 55 (1992)).

Some courts have held that the enforcement of a forum selection clause is properly addressed on a motion to dismiss under Rule 12(b)(6). *See, e.g., Huntingdon Eng'g & Envtl. Inc. v. Platinum Software Corp.,* 882 F.Supp. 54, 56–57 (W.D.N.Y. 1995); *Haskel v.. FPR Registry, Inc.,* 862 F.Supp. 909, 915 (E.D.N.Y.1994) ("Although courts have often enforced forum selection clauses by granting a motion to dismiss for improper venue, the better view is that forum selection clauses do not render venue improper and thus may not be enforced by a motion to dismiss for improper venue.").

On the other hand, the Ninth Circuit has concluded that forum selection clauses are properly addressed under Rule 12(b)(3). *See R.A. Argueta v. Banco Mexicano,* S.A., 87 F.3d 320, 324 (9th Cir.1996) (reasoning that because in the Supreme Court cases analyzing such clauses "the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis," Rule 12(b)(6) was not the proper procedural mechanism). The Second Circuit in *New Moon* also considered materials beyond the pleadings. *See New Moon,* 121 F.3d at 30.

A number of courts in this Circuit have also dismissed actions under Rule 12(b)(3) based on forum selection clauses. *See, e.g., Grace v. Corporation of Lloyd's,* No. 96 Civ. 8334, 1997 WL 607543 (S.D.N.Y. Oct. 2, 1997); *Medoil Corp. v. Citicorp,* 729 F.Supp. 1456, 1457 (S.D.N.Y.1990) ("[A] motion to dismiss pursuant to a forum selection clause is properly considered a motion to dismiss for lack of venue."); *Ritchie v. Carvel Corp.,* 714 F.Supp. 700 (S.D.N.Y.1989) (Leval, J.); *cf. Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (affirming a district court dismissal of complaint for improper venue and remand to state court where the movant relied on a "forum selection clause that purport[ed] to preclude litigation from a venue other than a specific state court").

Judge Scheindlin in the Southern District of New York was recently presented with a similar scenario whereby a defendant moved to dismiss for improper venue under Rule 12(b)(3) based on a forum selection clause. *See Stamm v. Barclays Bank of New York,* 960 F.Supp. 724, 730 (S.D.N.Y.1997). Noting that "[t]here appears to be a split among the Courts of Appeal[s] as to whether Rule 12(b)(3) is the proper vehicle to enforce a forum selection clause," Judge Scheindlin determined that she need not "enter this tangled web," *id.* at 730, as "[w]hichever rule applies, it is well-established that plaintiffs must demonstrate that the [forum selection clauses] were incorporated into [the relevant documents] by fraud or overreaching to defeat defendants' motion to dismiss." *Id.* Judge Scheindlin considered

matters outside of the pleadings in addressing this issue.

Consistent with the above-cited case law, the Court will address the forum selection clause here as raising a venue issue under Rule 12(b)(3). The Court does not decide whether this issue might more properly have been raised by way of Rule 12(b)(6), as the issue is squarely framed by Defendants under Rule 12(b)(3) and Plaintiff does not argue that this is an improper procedural mechanism. *See Weeks Marine, Inc. v. M/V Unimaster*, No. Civ. A. 97–1947, 1997 WL 660624, at *2 n. 2 (E.D.La. Oct. 23, 1997) (where parties did not raise issue of whether motion should be addressed under Rule 12(b)(3) or 12(b)(6), the Court treated the motion as parties did). Moreover, the Court will consider the extensive materials outside of the pleadings submitted by the parties.

## II. *Standards for Enforcement of Forum Selection Clauses*

■ Forum selection clauses are presumptively enforceable. *See New Moon*, 121 F.3d at 29 (noting plaintiff's burden "to make a 'strong showing' in order to overcome the presumption of enforceability" of a forum selection clause). The Supreme Court has stated in a leading case on this issue that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Indeed, "[t]he Supreme Court has repeatedly upheld the validity of forum selection clauses." *Ainsley Skin Care of New York, Inc. v. Elizabeth Grady Face First, Inc.*, No. 97 CIV. 6716, 1997 WL 742526, at *2 (S.D.N.Y. Dec. 2, 1997) (collecting cases).

■ "[I]t is well-established that [forum selection] clauses will be enforced unless it clearly can be shown that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Karl*

*Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir.1988) (internal quotation marks and citations omitted). The Second Circuit in *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir.1993), listed the following factors as those to consider in determining if forum selection and choice of law clauses are unreasonable:

> (1) if their incorporation into the agreement was the result of fraud or over-reaching ...; (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum ...; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy ...; or (4) if the clauses contravene a strong public policy of the forum state.

*Id.* at 1363 (citations omitted).

## III. *Application to the Instant Case*

### A. *The Forum Selection Clause*

As noted above, the forum selection clause at issue here was included in the parties' Agreement. (M. Mumcuoglu Decl. Ex A.) The relevant section, entitled *Legal Claims and Choice of Law*, provides as follows:

> a. It is agreed by the parties that ... any dispute concerning this Agreement or deriving therefrom shall be adjudicated in the appropriate legal institutions in the State of Israel, all being subject to subclause (b), below.
>
> b. The parties hereby agree that in any instance of dispute between them they will turn to an arbitrator, to be appointed by the Chairman of the Bar Association in Jerusalem or by the Jerusalem District Court.

(*Id.* ¶ 11.)

Although the parties' discussion of the forum selection clause includes in part a discussion of the arbitration agreement, the Court's analysis on the present motion is limited to a discussion of the forum

selection clause which provides for adjudication in "the appropriate legal institutions in the State of Israel." Because the Court concludes that venue in this District is improper, the Court does not reach Defendants' argument that this action should be stayed and arbitration compelled.

### B. Analysis of Plaintiff's Arguments Against Enforcement

Attempting to avoid this forum selection clause, Plaintiff argues that: (1) the forum selection clause is unreasonable; (2) the Agreement between the parties was procured by fraud; and (3) the forum selection clause does not encompass the fraudulent inducement claim here. These issues will be addressed *seriatim.*

#### 1. Reasonableness of the Clause

##### a. Test to be Employed

Plaintiff argues that "it would be unreasonable and unjust to enforce the forum selection clause under the circumstances." (Pl.'s Mem. at 10 (emphasis removed).) Plaintiff employs a "seven factor test" utilized by Judge Sweet in *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,* 656 F.Supp. 464, *aff'd,* 838 F.2d 656 (2d Cir.1988), which, according to Plaintiff, represents the proper analysis for examining whether a forum selection clause should be enforced.

As noted by Defendants, however, the Second Circuit in affirming the district court in *Karl Koch* did not mention the "seven factor test"; indeed, the Court's research indicates that the *Karl Koch* test has been utilized very infrequently. *See, e.g., Royal Ins. Co. of Am. v. Matthew,* No. 93 Civ. 3482, 1993 WL 364452, at *2 (S.D.N.Y. Sept. 10, 1993) (considering these seven factors, where the parties agreed that the factors applied). Moreover, recent Second Circuit case law makes no mention of this formulation. Thus, the Court will not undertake the analysis proposed by Plaintiff, but rather will consider the factors discussed above.

##### b. Reasonableness in the Instant Case

■ In the Court's view, Plaintiff has not made the requisite "strong showing" of unreasonableness such that the forum selection clause should be disregarded.

First, Plaintiff has not, as discussed below, provided sufficient information to indicate that fraud occurred in the procurement of the forum selection clause.

Moreover, Plaintiff has not made a strong showing that the clause deprives Plaintiff of its day in Court because of the grave inconvenience of the selected forum. In that regard, the Court notes that Schnall has already traveled to Israel in connection with the negotiation of the Agreement. Moreover, it appears that Israeli law permits the taking of evidence outside of the jurisdiction in an arbitration, (*see* Sept. 23, 1997 Yaakov Avimor Decl. ¶ 30; Defs.' Reply Ex. BB), which may lessen any inconvenience to Plaintiff. Moreover, Plaintiff has failed to demonstrate that J.B. Harris's "financial[ ] devastat[ion]" or Schnall's fear of traveling to Israel, (Schnall Decl. ¶ 25), warrant disregarding the parties' explicit agreement to resolve disputes in Israel.

As to public policy issues, the fact that the parties' Agreement also contains a provision for arbitration by which the "arbitrator will not be bound by substantive law and the laws of procedure," is completely unremarkable in the arbitration context, contrary to Plaintiff's protestation that "[t]his situation *reeks* of injustice!" (Pl.'s Mem. at 14.) *See, e.g., Silverman v. Benmor Coats, Inc.,* 61 N.Y.2d 299, 308, 473 N.Y.S.2d 774, 779, 461 N.E.2d 1261 (1984) (noting that "absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence").

#### 2. Alleged Procurement of the Agreement by Fraud

■ Plaintiff argues that because the parties' Agreement was purportedly procured by fraud, the forum selection clause

should not be enforced. Further, Plaintiff argues that "[t]he parties['] assent to the forum selection clause cannot reasonably be viewed as separate and distinct from their assent to the Agreement as a whole." (Pl.'s Mem. at 17.) In the Court's view, Plaintiff's position is without merit and is inconsistent with the case law.

Fraud in the inducement of the Agreement, as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause. *See, e.g., A.I. Credit Corp. v. Liebman,* 791 F.Supp. 427, 430 (S.D.N.Y.1992) ("A party may not ... avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that 'the *inclusion of that clause in the contract was the product of fraud or coercion.*'" (citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (emphasis in original) (further citation omitted))); *see also Stamm,* 960 F.Supp. at 729 ("A claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection ... clause found in that contract. Rather, it is the inclusion of those specific clauses plaintiffs seek to avoid that must have been induced by fraud.") (collecting cases); *Brandner Corp. v. V–Formation, Inc.,* No. 96 CIV. 3163, 1996 WL 312225, at *7 (S.D.N.Y. June 11, 1996) (same).

In light of this clear authority, the Court rejects Plaintiff's argument that "[e]ach clause of the Agreement ... was not assented to separately," but rather "[e]ach party agreed to a 'bundle of promises.'" (Pl.'s Mem. at 18.) Here, Plaintiff received advice from counsel as to the potential effects of a forum selection clause and has submitted the declaration of counsel so stating. (Undated Decl. of Arthur H. Anderson, Jr. ¶¶ 3, 5–6.) Despite the fact that Schnall was "especially concerned" about the forum selection clause, he never objected to or raised his concerns about the clause. (M. Mumcuoglu Decl. ¶ 11;

Sept. 23, 1997 Dr. Madeleine Mumcuoglu Decl. ¶ 5.) Plaintiff produces no evidence that Defendants defrauded it in specifically inducing it to enter into the forum selection clause, and thus the Court will not refuse to honor the clause on this basis.

3. *Inclusion of the Present Claim Within the Forum Selection Clause*

■ Plaintiff next argues, relying on *In Re Kinoshita & Co.,* 287 F.2d 951 (2d Cir.1961), that "[s]ince the language of the forum selection clause only provides for the arbitration of disputes concerning or deriving from the Agreement, the clause is not sufficiently broad to encompass a dispute or controversy about an alleged fraudulent inducement." (Pl.'s Mem. at 21.) In the Court's view, Plaintiff's argument is without merit.

In *In re Kinoshita & Co.,* a 1961 case, the Second Circuit considered whether a contractual clause mandating arbitration was "sufficiently broad to encompass a dispute or controversy about an alleged fraudulent inducement of the contract." *Id.* at 953. The court concluded that the clause, which provided for arbitration of "any dispute or difference ... aris[ing] under" the contract, *id.* at 952, did not encompass a claim for fraudulent inducement of the contract itself.

Assuming that *Kinoshita* is relevant to forum selection clauses outside of the arbitration context, the Court nonetheless concludes that *Kinoshita* does not warrant disregarding the parties' agreement as to the Israeli forum. As an initial matter, the Court takes note that *Kinoshita* has been significantly discredited by the Second Circuit and has been limited to its "precise facts." *See S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844, 844 n. 6 (2d Cir.1987) (explaining that the court need not "discuss the continued viability of *Kinoshita*" as the clause before the court differed from the one in *Kinoshita*); *St. Paul Fire &*

**192**

*Marine Ins. Co. v. Employers Reinsurance Corp.,* 919 F.Supp. 133, 135 (S.D.N.Y. 1996) (noting that the "authority of *Kinoshita* is highly questionable in this Circuit"); *Meadows Indem. Co., Ltd. v. Baccala & Shoop Ins. Servs., Inc.,* 760 F.Supp. 1036, 1044 (E.D.N.Y.1991) (stating that the *Genesco* court "hinted . . . that the authority of *Kinoshita* is questionable"). Thus, the Second Circuit in *Samitri* held that, notwithstanding *Kinoshita,* a plaintiff's claims of fraudulent inducement were not barred by a forum selection clause because that clause encompassed " 'any question or dispute aris[ing] or occur[ring] under' the agreement." *Samitri,* 745 F.2d at 194. The court concluded that this clause was sufficiently different from the *Kinoshita* forum selection clause, which covered "any dispute or difference aris[ing] under" the agreement. *Id.* at 194.

 Moreover, as a general matter, a forum selection clause found in a contract may still be enforced when the action involves claims other than breach of contract. *See Warnaco, Inc. v. VF Corp.,* 844 F.Supp. 940, 947 (S.D.N.Y.1994) (noting that "courts have read contractual forum selection clauses to encompass claims beyond breach of the contract containing the clause"); *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 720–21 (2d Cir.1982) (forum selection clause relating to any action "arising directly or indirectly from" a franchise agreement includes both claims for breach of contract and violations of the Sherman Antitrust Act). Judge Sifton in *Warnaco* relied on, *inter alia, Crescent Int'l, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943 (3d Cir.1988), which he characterized as holding that "although only one of the [party's] claims was based on a breach of contract theory, pleading alternate non-contractual theories is not enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Warnaco,* 844 F.Supp. at 948.

In sum, even if *Kinoshita* applied to the forum selection clause in the parties' Agreement, that clause is significantly broader than the clause in *Kinoshita,* as it includes "any dispute concerning this Agreement or deriving therefrom." Thus *Kinoshita* does not bar the enforcement of the forum selection clause as to the alleged fraudulent inducement.

Notwithstanding Plaintiff's plea that the Court "put an end to the foolin' " and hear the case, (Schnall Decl. ¶ 21), the Court concludes that the forum selection clause in the Agreement precludes Plaintiff from bringing the present action outside of the State of Israel.

### CONCLUSION

For the reasons indicated above, the instant case is dismissed for improper venue.

SO ORDERED.