# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KELLY ROOFING HOLDINGS, LLC, a Delaware limited liability company, and RELIANT ROOFING, LLC, d/b/a KELLY ROOFING, a Florida limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2025-1049-BWD |
| CHANTELLE A. FLORES and INTEGRITY ROOFING AND GUTTERS, INC., a Florida corporation, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION RESOLVING MOTION TO DISMISS

Date Submitted: May 19, 2026
Date Decided: June 4, 2026

Philip Trainer, Jr., Samuel M. Gross, ASHBY & GEDDES, Wilmington, DE; OF COUNSEL: Peter S. French, Brittni Wassmer, TAFT STETTINIUS & HOLLISTER, Indianapolis, IN; *Attorneys for Plaintiffs Kelly Roofing Holdings, LLC and Reliant Roofing, LLC, d/b/a Kelly Roofing*.

Brian A. Sullivan, WERB & SULLIVAN, Wilmington, DE; Charles J. Brown, III, GELLERT SEITZ BUSENKELL & BROWN, Wilmington, DE; OF COUNSEL: Robert Clayton Roesch, Adam J. Wicker, SHUFFIELD, LOWMAN & WILSON, P.A., Orlando, FL; *Attorneys for Defendants Chantelle A. Flores and Integrity Roofing and Gutters, Inc.*

**DAVID, V.C.**

The plaintiffs and defendants in this action entered into an asset purchase agreement containing a forum selection clause. The forum selection clause states that an action arising out of the asset purchase agreement or the transactions contemplated thereby "may be instituted" in Delaware federal or state court, and each party "irrevocably submits to the exclusive jurisdiction of such courts in any such" action. The defendants have moved to dismiss this action in deference to a first-filed lawsuit in Florida state court, arguing that the forum selection provision in the asset purchase agreement is permissive rather than mandatory, or, alternatively, that the plaintiffs have waived their rights to invoke the forum selection provision. This memorandum opinion rejects those arguments, concluding that the Delaware forum selection provision in the asset purchase agreement is mandatory and that the plaintiffs did not waive it by filing an action in Florida to enforce a different agreement. With one minor exception, the motion to dismiss is denied.

## I.   BACKGROUND[1]

### A.   The APA

Chantelle Flores owns Integrity Roofing and Gutters, Inc. ("Integrity," and with Flores, "Defendants"), a Florida corporation that repairs roofs and gutters for commercial and residential buildings.  Am. Compl. ¶¶ 6, 7, 10.

On January 15, 2025, Defendants, nonparty All Levels Roofing Inc. ("ALR"), Kelly Roofing Holdings, LLC ("Kelly Roofing"), and a Kelly Roofing subsidiary, Reliant Roofing, LLC ("Reliant," and with Kelly Roofing, "Plaintiffs"), entered into an Asset Purchase Agreement ("APA") under which Plaintiffs agreed to purchase, and Defendants agreed to sell, Integrity's assets.  *Id.* ¶ 14; *id.*, Ex. 1 to Ex. A [hereinafter APA].

Under the APA, Integrity and ALR, as "Sellers," received a $12 million payment subject to adjustments with the potential to receive additional consideration under an earnout, and rolled over equity in the surviving business in the form of

---

[1] Unless otherwise noted, the following facts are taken from Plaintiffs' Verified Amended Complaint for Damages and Injunctive Relief (the "Amended Complaint") and the documents incorporated by reference therein.  Verified Am. Compl. for Damages and Injunctive Relief [hereinafter Am. Compl.], Dkt. 2.  When addressing a motion to dismiss under Court of Chancery Rule 12(b)(3), "the court is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset." *Sylebra Cap. P'rs Master Fund, Ltd. v. Perelman*, 2020 WL 5989473, at *9 (Del. Ch. Oct. 9, 2020) (quoting *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018)).  The transcript of the May 19, 2026 oral argument has not been finalized.  Citations to "Draft Tr. __" refer to a draft transcript of the May 19, 2026 oral argument.

Series B common stock, and could receive additional consideration under an earnout. Am. Compl. ¶ 16; APA §§ 2.05, 2.07.

Defendants made representations and warranties in the APA that Plaintiffs now allege were not true. Am. Compl. ¶¶ 18–36; *see* APA §§ 4.04, 4.05, 4.06(e)–(f), 4.07(a), 4.12(a), 4.14, 4.17(a)–(b).

Defendants also agreed to be bound by confidentiality restrictions and restrictive covenants. Section 7.02 requires each Defendant to "hold and . . . use its reasonable best efforts to cause its or their respective Representatives to hold, in confidence any and all information, whether written or oral, concerning the Business." APA § 7.02. Section 7.03 contains a noncompetition provision that states:

> For a period of five (5) years commencing on the Closing Date (the "Restricted Period"), no Selling Party[2] shall, nor shall any Selling Party cause or permit any of its Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in the Restricted Business in the Territory; (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, director, manager, principal, agent, trustee or consultant; or (iii) cause, induce or encourage any actual or prospective client, customer, supplier or licensor of the Business (including any existing or former client or customer of [Integrity] and any Person that becomes a client or customer of the Business after the Closing), or any other Person who has a business relationship with the Business, to terminate or modify any such actual or prospective relationship.

---

[2] "Selling Parties" means Integrity as the "Seller" and Flores as the "Indirect Seller." *See* APA Preamble.

3

*Id.* § 7.03(a). "Restricted Business" means "the business of installing, repairing and maintaining roofs, gutters and related portions of commercial and residential structures, as such business was conducted, or proposed to be conducted, by [Integrity] at and prior to the Closing." *Id.* Art. I. The "Territory" includes Florida, Georgia, North Carolina, South Carolina, and Puerto Rico. *Id.*

Finally, Section 9.10 of the APA (the "Forum Selection Provision") states:

Any legal suit, action or proceeding arising out of or based upon this Agreement, the ancillary documents or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America or the courts of the state of Delaware in each case located in the City of Wilmington and County of New Castle, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. . . . The Parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

*Id.* § 9.10(b) (capitalization altered).

### B.    The Employment Agreement

Also on January 15, Flores and Reliant entered into an "Employment Agreement" to govern the terms of Flores's employment as President of the acquired business after the transaction. Am. Compl. ¶ 17; *id.*, Ex. 10 to Ex. A [hereinafter Empl. Agt.]. The Employment Agreement includes restrictive covenants that prohibit Flores from owning or engaging in a competitive business, selling or

4

providing substantially similar services, hiring or soliciting Reliant employees, and soliciting or inducing Reliant's customers for one year after Flores's termination. Empl. Agt. §§ 6(a)–(d).

The Employment Agreement contains its own forum selection clause that states:

> This Agreement shall be governed by the internal laws of the State of Florida, without regard to conflict of law principles. Any disputes arising under this Agreement may be brought in a state court of competent jurisdiction in the State of Florida, or in the federal court for the Southern District of Indiana, and the parties consent to personal jurisdiction of such courts and waive any defense of forum non-conveniens.

*Id.* § 10.

### C. Plaintiffs Terminate Flores And She Begins A Competing Business.

As alleged in the Amended Complaint, after executing the APA, Plaintiffs discovered that Defendants had failed to disclose, among other information, over $1.5 million in liabilities of the acquired business; a pending lawsuit in which a contractor was seeking indemnification from the business; a material contract committing the business to provide services; and that Flores had engaged in improper activity that included fraudulent invoicing, bribery, and kickbacks while previously operating the business. Am. Compl. ¶¶ 28, 31–32, 34, 36–37. In addition, while working for the acquired business, Flores allegedly manipulated invoices for subcontractor services and materials totaling more than $500,000, and

5

deposited checks written to the business into her personal bank account.  *Id.* ¶¶ 53–54, 60; *id.*, Exs. M–N.

When Plaintiffs discovered Flores's misconduct, they terminated her employment.  Am. Compl. ¶ 63.  After her termination, Flores allegedly deleted the business's Google Business Profile, turned off its Angi business account, and changed its administrative email account.  *Id.* ¶¶ 65–68.  Flores also informed third-party inspection companies that the business's work was deficient and told its subcontractors that the company was "broke" and could not pay them.  *Id.* ¶¶ 69–70.

Finally, as alleged in the Amended Complaint, after her termination, Flores formed and began to operate a competing roofing business, Alpha Core Roofing, and tried to take "the whole sales team [of Integrity] with her to the new company."  *Id.* ¶ 76; *id.*, Ex. M.

### D.    The Parties File Lawsuits In Florida State Court.

On June 6, Plaintiffs sued Flores in Collier County, Florida (the "Collier County Litigation") for breach of the Employment Agreement, conversion of corporate assets, and breach of fiduciary duty.  Defs. Chantelle A. Flores and Integrity Roofing and Gutters, Inc.'s Opening Br. in Supp. of Their Mot. to Dismiss Pls.' Am. Verified Compl. [hereinafter OB], Ex. I ¶¶ 26–59, Dkt. 28.  Plaintiffs moved for a preliminary injunction twice; both motions were denied.  OB, Exs. J–L.

On June 13, Defendants sued Plaintiffs in Orange County, Florida (the "Orange County Litigation") for breach of the APA. OB at 11. Defendants amended their complaint on August 22, adding claims for breach of the Employment Agreement and seeking declarations that restrictive covenants in the APA and Employment Agreement are unenforceable. *Id.*, Ex. H ¶¶ 84–113.

### E. Procedural History

On September 17, Plaintiffs initiated this action through the filing of a Verified Complaint for Damages and Injunctive Relief. Verified Compl. for Damages and Injunctive Relief, Dkt. 1. On October 17, Plaintiffs filed the operative Amended Complaint, alleging claims for fraud in the inducement and breach of the restrictive covenants in the APA. Am. Compl. ¶¶ 83–110.

On October 23, Plaintiffs moved to expedite the litigation in advance of a hearing on their forthcoming motion for preliminary injunction. Pls.' Mot. for Expedited Proceedings, Dkt. 3; Pls.' Mot. for Prelim. Inj., Dkt. 4. The Court ordered expedition and set a hearing on the motion for preliminary injunction for March 12, 2026, which, at the parties' request, was later rescheduled to May 19. Dkt. 33.

Defendants moved to dismiss the Amended Complaint on October 31 (the "Motion to Dismiss"). Defs. Chantelle A. Flores and Integrity Roofing and Gutters, Inc.'s Mot. to Dismiss Pls.' Verified Am. Compl., Dkt. 7. Briefing on the Motion

7

to Dismiss concluded on December 31.[3]  On February 12, 2026, the Court deferred ruling on the Motion to Dismiss until after the May 19 hearing on Plaintiffs' motion for preliminary injunction.  Dkt. 93 (citing Ct. Ch. R. 12(i)).

On April 8, the parties stipulated to a preliminary injunction, obviating the need for a preliminary injunction hearing.  Dkt. 101.  The Court agreed to use the May 19 hearing for oral argument on the Motion to Dismiss.  Dkt. 102.

## II.    ANALYSIS

Defendants move to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(3), arguing that the Court should defer to the first-filed Collier County Litigation.  Defendants contend that the Forum Selection Provision in the APA, under which the parties agreed to submit to the "exclusive jurisdiction" of Delaware courts, is not mandatory, or, alternatively, that Plaintiffs waived it by filing litigation in Florida.  Defendants also move to dismiss Count III of the Amended Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim.

---

[3] *See* OB; Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss [hereinafter AB], Dkt. 46; Defs. Chantelle A. Flores and Integrity Roofing and Gutters, Inc.'s Reply Br. in Supp. of Their Mot. to Dismiss Pls.' Am. Verified Compl., Dkt. 49.

**A.    The Forum Selection Provision Under Which The Parties Agreed To Submit To The "Exclusive Jurisdiction" Of Delaware Courts Is Mandatory.**

Defendants move to dismiss this action under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970). Under *McWane*, the Court will defer to "a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues." *Id.* at 283. Defendants contend that *McWane* requires dismissal in favor of the first-filed Collier County Litigation.

Defendants' *McWane* argument depends on the absence of a binding forum selection provision. "The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'" *Ashall Homes Ltd. v. ROK Ent. Gp. Inc.*, 992 A.2d 1239, 1245 (Del. Ch. 2010) (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)). "[W]here contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause, even if, absent any forum selection clause, the *McWane* principle might otherwise require a different result." *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1145 (Del. 2010).

Forum selection clauses, like other contractual provisions, "are interpreted consistent with the principle that '[w]here the [contractual language] is clear and

unambiguous, courts [should] interpret the contract in accordance with the ordinary and usual meaning of the language.'" *In re Bay Hills*, 2018 WL 3217650, at *5 (alteration in original) (quoting *Grosvenor Orlando Assocs. v. HCP Grosvenor Orlando LLC*, 2013 WL 3215704, at *2 (Del. Ch. June 26, 2013)). "When interpreting contracts, this Court gives meaning to every word in the agreement and avoids interpretations that would result in 'superfluous verbiage.'" *Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007). Contract language is ambiguous only "if it is susceptible to more than one reasonable interpretation." *Manti Hldgs., LLC v. Authentix Acq. Co.*, 261 A.3d 1199, 1208 (Del. 2021) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010)).

Defendants argue that the Forum Selection Provision permits, but does not mandate, the parties to file litigation in a Delaware court. "Permissive forum selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere." *In re Bay Hills*, 2018 WL 3217650, at *5 (quoting 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3803.1 (4th ed. 2018)). "In contrast, 'mandatory forum selection clauses contain clear language indicating that litigation will proceed exclusively in the designated forum.'" *Id.* (citation omitted).

Again, the Forum Selection Provision states that an action "arising out of or based upon this Agreement, the ancillary documents or the transactions

10

contemplated hereby or thereby *may be instituted* in the federal courts of the United States of America or the courts of the state of Delaware" and "each party irrevocably submits to the *exclusive jurisdiction* of such courts in any such suit, action, or proceeding." APA § 9.10(b) (emphasis added). Defendants focus on the italicized "may be instituted," which they interpret to mean the parties are permitted, but not required, to file suit in federal or state courts in Delaware. Plaintiffs respond that any permissive language relates to a party's decision whether to file litigation in federal or state court, and the agreement that "each party irrevocably submits to the *exclusive jurisdiction* of such courts" creates a mandatory requirement to file litigation only in Delaware federal or state court.

Plaintiffs' interpretation is consistent with the plain language of the Forum Selection Provision. Other courts have interpreted nearly identical provisions as creating a mandatory requirement to file litigation in a particular forum. For instance, in *Mensah v. Bell*, 2023 WL 4683327 (C.D. Cal. June 5, 2023), a California federal court concluded the following forum selection provision was mandatory:

> Any legal suit, action, proceeding, or dispute arising out of or related to this Agreement, the other Transaction Documents, or the transactions contemplated hereby or thereby *may be instituted* in the federal courts of the United States of America or the courts of the State of Montana in each case located in the city of Whitefish and county of Flathead, and each party irrevocably submits to the *exclusive jurisdiction* of such courts in any such suit, action, proceeding, or dispute.

11

*Id.* at \*2 (emphasis added). The court rejected the plaintiff's argument that the word "may" rendered the provision permissive, explaining that "any permissive language relates only to whether the action is filed in state or federal court" while the reference to "exclusive jurisdiction" plainly made the provision mandatory. *Id.* At least two other courts have reached the same conclusion. *See AGR Fin., L.L.C. v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 400 (S.D.N.Y. 2000) (interpreting similar language as mandatory, explaining: "The use of the word 'may' does not negate the mandatory nature of the forum selection clause. All it does is make clear that it is up to [plaintiff] whether it will enforce the clause by bringing suit in either the New York state or federal forum."); *Ex parte Sunset Digit. Commc'ns, Inc.*, 377 So. 3d 501, 510 (Ala. 2022) (interpreting similar language as mandatory).[4]

On the other hand, Defendants' interpretation of the Forum Selection Provision fails to give meaning to the words "*exclusive* jurisdiction,"[5] and none of

---

[4] Plaintiffs first identified the *AGR Financial* and *Sunset Digital* cases in a demonstrative used during oral argument. After argument, Plaintiffs' counsel filed a letter apologizing to the Court and Defendants' counsel for belatedly raising additional authority at argument and suggesting that the Court ignore the additional citations or permit Defendants to submit a response. *See* Dkt. 109. I am sincerely grateful that the parties alerted me to this issue, but additional submissions are not necessary; these cases are not dispositive of the rulings herein and I do not require additional briefing to understand them.

[5] *See* Draft Tr. at 9:1–3 (arguing that "exclusive jurisdiction" means "if a case is filed in Delaware, then if it is proper, if there's not a first filed case, then [jurisdiction in Delaware is] exclusive").

the cases on which Defendants rely interpreted a provision that uses this phrase.[6]

Defendants' interpretation also fails to give meaning to the parties' agreement not to "claim in any such [Delaware] court that any such suit . . . has been brought in an inconvenient forum." APA § 9.10(b). Defendants do not explain how such language can reasonably be read to permit the present Motion to Dismiss in favor of a Florida forum.[7]

The Forum Selection Provision designates Delaware as the exclusive forum for this action and Defendants agreed not to argue otherwise. Venue is proper and dismissal under *McWane* is inappropriate.

---

[6] *See, e.g.*, *In re Bay Hills*, 2018 WL 3217650, at *6 (finding "[e]ach of the Partners hereby consents to the jurisdiction" is not mandatory); *McWane, Inc. v. Lanier*, 2015 WL 399582, at *4 (Del. Ch. Jan. 30, 2015) (finding "each of the parties (a) irrevocably and unconditionally consents and submits to the exclusive jurisdiction" is mandatory but "the parties irrevocably submit to the jurisdiction" is not); *PPF Safeguard, LLC v. BCR Safeguard Hldg., LLC*, 2010 WL 2977392, at *3 (Del. Ch. July 29, 2010) (finding "[e]ach member hereby (i) submits to personal jurisdiction" is not mandatory); *Cargill, Inc. v. Lone Star Techs., Inc.*, 2003 WL 230749, at *2 (Minn. Ct. App. Feb. 4, 2003) (finding "[e]ach party hereto irrevocably agrees that the courts . . . are to have jurisdiction" is not mandatory).

[7] Defendants claim that in *McWane, Inc. v. Lanier*, the Court found similar language did not render a forum selection provision mandatory. In *Lanier*, the Court interpreted two agreements with seemingly contradictory forum selection provisions, both of which prohibited the parties from arguing that suit had been brought in the wrong forum. 2015 WL 399582, at *4. The Court interpreted the provisions harmoniously, concluding that a forum provision under which the parties agreed to submit to the "exclusive jurisdiction" of Delaware courts—like the Forum Selection Provision here—was mandatory. *Id.*

**B.** **Plaintiffs Did Not Waive The Forum Selection Provision By Filing Litigation To Enforce The Employment Agreement In Florida State Court.**

Defendants argue that even if the Forum Selection Provision is mandatory, Plaintiffs waived it by filing the Collier County Litigation in Florida state court.

"Under Delaware law, a waiver is 'the voluntary and intentional relinquishment of a known right.'" *Dirienzo v. Steel P'rs Hldgs. L.P.*, 2009 WL 4652944, at *4 (Del. Ch. Dec. 8, 2009) (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)). "A waiver may be express or implied, but either way, it must be unequivocal." *Id..* A party can waive its rights under a forum selection provision by filing litigation in the wrong forum. *Naples Ctr. for Dermatology & Cosm. Surgery, PA v. Trisan*, 2025 WL 1276207, at *5 (Del. Ch. May 2, 2025).

Defendants argue that Plaintiffs waived the Forum Selection Provision in the APA by filing the Collier County Litigation to enforce the Employment Agreement. OB at 20. Filing the Collier County Litigation did not waive any right under the APA because Plaintiffs were expressly permitted under the Employment Agreement to file suit in Florida.

Defendants argue that the Forum Selection Provision in the APA covers claims under the Employment Agreement because that contract is an "ancillary

14

document[]" to the APA,[8] and as a result, the Forum Selection Provision in the APA required Plaintiffs to bring their claims under the Employment Agreement in Delaware. But the Employment Agreement expressly permits "[a]ny disputes arising under this Agreement [to] be brought in a state court of competent jurisdiction in the State of Florida, or in the federal court for the Southern District of Indiana[.]" Empl. Agt. § 10.

The APA and the Employment Agreement, executed on the same date in connection with the same transaction, "were designed to work together" and are "complementary and not conflicting." *Lanier*, 2015 WL 399582, at \*4, \*10. The best way to harmonize the two forum selection provisions is that the parties must bring litigation arising out of the APA in Delaware courts, but litigation to enforce the Employment Agreement also may be filed in Florida or Indiana. Defendants' alternative reading—that disputes arising under the Employment Agreement are covered by the Forum Selection Provision in the APA—would render the forum provision in the Employment Agreement meaningless.

---

[8] *See* APA § 9.10(b) ("any legal suit, action or proceeding arising out of or based upon this Agreement, *the ancillary documents* or the transactions contemplated hereby or thereby may be instituted in the federal courts of the United States of America or the courts of the state of Delaware" (emphasis added)).

Accordingly, Plaintiffs properly filed the Collier County Litigation to enforce the Employment Agreement in Florida without waiving their rights to enforce the APA in Delaware.

**C.     The Motion To Dismiss Count III Is Granted.**

Count III of the Amended Complaint does not allege a separate cause of action but seeks injunctive relief to remedy the contractual breaches asserted in Counts I and II. Am. Compl. ¶¶ 105–110. "Injunctions are a form of relief, not a cause of action." *Quadrant Structured Prods. Co.. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014). Because Count III seeks a remedy without asserting a cause of action, it must be dismissed. The dismissal has no practical effect because Counts I and II are sustained and injunctive relief remains an available remedy.

## III.     CONCLUSION

For the reasons explained above, Count III of the Amended Complaint is dismissed. The Motion to Dismiss is otherwise DENIED.